SC

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jason Allen Campbell,

Plaintiff,

v.

Wexford Health Source Inc., et al.,

Defendants.

No.   CV 23-08063-PCT-JAT (DMF)

**ORDER**

Plaintiff Jason Allen Campbell, who is confined in the Mohave County Jail, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2).  On May 25, 2023, the Court granted the Application and dismissed the Complaint with leave to amend because it failed to state a claim. Thereafter, Plaintiff filed a motion to appoint counsel (Doc. 7), a notice (Doc. 8), a motion to release information under the Freedom of Information Act (Doc. 10), and a First Amended Complaint (Doc. 9).  On July 19, 2023, the Court denied the motions and dismissed the First Amended Complaint with leave to amend within 30 days (Doc. 11).

Plaintiff has filed a Second Amended Complaint (Doc. 14), a motion for status (Doc. 15), another motion to appoint counsel (Doc. 16), a request for production of documents (Doc. 17), and a declaration (Doc. 18).  The Court will grant the motion for status to the extent the status of this case is described herein.  The Court will dismiss the Second Amended Complaint and this action and will deny as moot the remaining motion and the request.

I. **Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II. Second Amended Complaint

In his three-count Second Amended Complaint, Plaintiff alleges claims for denial of constitutionally adequate medical care, excessive force, and unconstitutional conditions of confinement. Plaintiff sues Wexford Health Sources ("Wexford") employee Jane Leankinjia, who works at the Mohave County Jail. Plaintiff also sues the following Mohave County Jail Officers: Leads, Engraph, and Nickolette. Plaintiff seeks injunctive, compensatory, and punitive relief.

Plaintiff designates **Count I** as a claim for denial of constitutionally adequate medical care. Plaintiff alleges the following:

Defendant Leankinjia failed to diagnose Plaintiff's ongoing medical concerns by failing to perform the "right" testing and treatment and by failing to obtain Plaintiff's medical records. Plaintiff claims that Leankinjia has thus acted recklessly and with the intent to harm Plaintiff by failing to conduct appropriate testing to assess the cause of his symptoms, such as pain in his "internal organs." As his injury, Plaintiff alleges "severe pain in internal organs," stress from "malnourished weight loss," and misdiagnosis of his legitimate medical concerns.

Plaintiff designates **Count II** as a claim of excessive use of force. He alleges the following:

In March 2021, Defendant Leads and Plaintiff "exchanged words" that resulted in Leads ordering Plaintiff to "go lock down" in his lower-tier cell even though Plaintiff was, at the time, on the upper tier and was apparently unable to descend the stairs as the result of a disability. While Plaintiff's back was turned, Leads ran towards Plaintiff, and Plaintiff felt the need to protect himself from Leads' "attempt on [Plaintiff's] life." Leads sprayed Plaintiff with pepper spray, which Plaintiff contends was excessive and uncalled for. Thereafter, an unidentified official punished Plaintiff by locking him up in the Special Housing Unit (SHU) for more than ten months, where Plaintiff suffered from "many acts of retaliation" that caused him stress and physical harm. As his injury, Plaintiff suffered emotional distress, physical harm, and more than 29 months of harassment by many

officers.

Plaintiff designates **Count III** as a claim for denial of visitation, which the Court construes as a claim for unconstitutional conditions of detention. Plaintiff alleges the following:

One day in August 2021,[1] Defendant Engraph was working in the Housing Unit's Central Command, and Defendant Nickolette was working in court transport. Plaintiff was "pulled" for an 11:30 a.m. court appearance at 8:30 a.m., even though he had a visit scheduled for 9:15 a.m. Plaintiff was placed in a holding cell for almost two hours before he was transported for his hearing and missed his scheduled visitation. Plaintiff knew that the scheduled visit would have "brought out a lot" for his defense, but Engraph told Plaintiff that it was not the jail's fault that the court ordered Plaintiff's transport. Plaintiff contends that the jail violated his right to freedom of association and imposed cruel and unusual punishment. Plaintiff contends that he received a 21-year sentence that could have been shorter if he had received the visitation.

## III.   Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d

---

[1] In his motion for status, Plaintiff states the events in Count III occurred on August 5, 2021. (Doc. 15 at 3.)

1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A.     Medical Care

In Count I Plaintiff alleges a claim for denial of constitutionally adequate medical care. The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). To state a medical care claim, a pretrial detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff claims that Defendant Leankinjia failed to have medically appropriate testing performed to diagnose and treat a medical condition affecting his internal organs. He also claims that she failed to obtain his prison medical records. Plaintiff alleges that he suffered severe pain, but he does not identify the source of this pain or state when it occurred. Plaintiff also fails to describe any other symptoms and their severity, any medical condition(s) that he had before he entered jail, or when and how he notified any Defendant of his symptoms and any extant medical condition(s). Indeed, he fails to allege from whom he sought medical evaluation of his symptoms, whether and when he was seen by any medical provider, or whether any tests were performed, or a diagnosis rendered. In short, Plaintiff fails to allege facts to support that Leankinjia acted with reckless disregard to a substantial risk of serious harm. Accordingly, Plaintiff fails to state a claim for denial of constitutionally adequate medical care. Count I will be dismissed.

### B. Excessive Use of Force

In Count II, Plaintiff alleges that Defendant Leads used excessive force against Plaintiff. The Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, applies to the use of excessive force against pretrial detainees that amounts to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). Force is excessive if the officers' use of force was "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state. *Kingsley*, 576 U.S. at 396; *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an investigatory stop). In determining whether the use of force was reasonable, the Court should consider factors including, but not limited to

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

Because officers are often forced to make split-second decisions in rapidly evolving situations, the reasonableness of a particular use of force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 2473-74 (citing *Graham*, 490 U.S. at 396). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Constitution. *Graham*, 490 U.S. at 396 (citation omitted).

Plaintiff alleges that he and Leads exchanged words and Leads ordered Plaintiff to lock down. He alleges that while his back was turned, he heard Leads run towards him causing Plaintiff to feel the need to protect himself. Plaintiff does not allege that Leads applied physical force against Plaintiff before Plaintiff felt the need to protect himself, nor does Plaintiff describe what he did to protect himself; that is, he does not identify the action that immediately preceded Leads's use of pepper spray. Essentially, Plaintiff's allegations are too vague to support that Leads' use of pepper spray was unreasonable under the circumstances. Accordingly, Plaintiff fails to state a claim for excessive force.

Plaintiff also alludes to retaliation by unidentified non-defendants. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287

(1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff fails to allege facts to support that any particular Defendant retaliated against him for exercising his constitutionally protected rights. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. Plaintiff's allegations concerning purportedly retaliatory acts are vague and conclusory. Accordingly, Plaintiff fails to state a claim in Count II for retaliation, and it will be dismissed.

### C. Conditions of Confinement

In Count III, Plaintiff alleges that Defendants Engraph pulled him from his cell and placed him in a holding cell awaiting transportation to court. As a result, Plaintiff alleges, he missed a previously scheduled visit with a "witness's wife," which he believes might have altered his subsequent conviction or sentence.

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

A pretrial detainee has a substantive due process right against restrictions that amount to punishment for a criminal offense. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir. 1991) (en banc)). In determining whether restrictions of pretrial detention implicate the protection against deprivation of liberty without due process of law, the court must determine whether those restrictions amount to punishment of the detainee. *Bell*, 441 U.S. at 535. If such restrictions amount to punishment implicating the detainee's liberty, the detainee is entitled to the procedural protections set forth in *Wolff v. McDonnell*. *See id.*; *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996). But there is a distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may; the fact that detention interferes with a detainee's desire to live as comfortably as possible with as little restraint as possible does not convert restrictions of detention into punishment. *Bell*, 441 U.S. at 537.

If a restriction of pretrial detention "is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 538. Conversely, if a restriction is arbitrary or purposeless, the Court may infer that the purpose of the governmental action is to punish. *Id.* at 539. But "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more,

constitute unconstitutional punishment," even if they are uncomfortable and would not have been imposed on the detainee if he had been released while awaiting trial. *Id.* at 540. Even when an institutional restriction infringes upon a specific constitutional guarantee, the "practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* at 547. "[Jail] administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* The duration of the restriction is relevant in determining whether the restriction amounted to punishment. *See, e.g.*, *id.* at 562.

Plaintiff alleges a single instance when he missed visitation because he was pulled early from his cell for transport to court. Plaintiff fails to allege any facts to support that he was unable to reschedule such visitation or facts to support that he was denied visitation on any other occasion, or was denied it in this instance as punishment for the crime(s) with which he was charged, or that his attorney could not have interviewed the witness. Accordingly, Plaintiff fails to state a claim for an unconstitutional denial of visitation and Count III will be dismissed.

**III.     Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss

Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1) Plaintiff's motion for status (Doc. 15) is **granted** to the extent the status of this case is discussed herein and is otherwise **denied**.

(2) The Second Amended Complaint (Doc. 14) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(3) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(4) Plaintiff's motion for appointment of counsel (Doc. 16) and request for production of documents (Doc. 17) are **denied** as moot.

(5) Plaintiff's declaration (Doc. 18) concerning relief that he seeks is **disregarded** as moot.

(6) The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and certifies that an appeal would not be taken in good faith for the reasons stated in the Order and because there is no arguable factual or legal basis for an appeal.

Dated this 9th day of November, 2023.

James A. Teilborg
Senior United States District Judge